**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Steven J. Lagermeier,**

**Plaintiff,**

**v.**

**Boston Scientific Corporation,**
**James R. Tobin, and Milan Kofol,**

**Defendants**

**Civil No. 10-4087 (SRN/SER)**

**ORDER**

---

Steven Lagermeier, Pro Se, 2316 Rivendell Lane, Minnetonka, Minnesota 55305

Robert L. Schnell, Jr.& Wendy J. Wildung, Faegre & Benson, LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendants

---

SUSAN RICHARD NELSON, United States District Judge

The above entitled matter came before the undersigned United States District Judge on Plaintiff's Motion to Strike Defendants' Motion to Dismiss and for Entry of Default and Judgment [Doc. No. 13] and Defendants' Motion to Dismiss the First Amended Complaint [Doc. No. 17]. For the reasons set forth below, Plaintiff's motion is denied as to the entry of default and entry of judgment, and denied as moot as to striking Defendants' original Motion to Dismiss. Defendants' motion is granted.

## I. BACKGROUND

Plaintiff Steven Lagermeier is a long-time shareholder of stock issued by Defendant Boston Scientific Corporation ("Boston Scientific"). Boston Scientific is a medical device

manufacturer organized under the laws of the State of Delaware. It is a publicly-held company that has issued over 1.52 billion shares of common stock. (Form 10-K for Fiscal Year Ended 12/31/10, Ex. 5 to Def.'s Reply Mem.) Plaintiff alleges that, at some point in time, he owned 274,106 shares of Boston Scientific stock. Mr. Lagermeier describes himself as "one of the substantial, individual, active stakeholders" of Boston Scientific stock, who was "figuratively 'inducted' into the 'BSC FAMILY', becoming one of BSC's substantial 'outside' investors; a constructive confidant of Executive Committee members at BSC." (Am. Compl. ¶¶ 5, 10, 12 [Doc. No. 2].)

In September 2010, Plaintiff filed suit against Boston Scientific, its former President and Chief Executive Officer (CEO) from 1999-2009, James R. Tobin, and its Vice-President of Investor Relations from 2002-2006, and current Treasurer, Milan Kofol, seeking damages of approximately $12.8 million. In his Amended Complaint, Lagermeier asserts three causes of action: (1) fraudulent misrepresentation (id. ¶¶ 17-26 [Doc. No. 2]); (2) breach of fiduciary duty by negligent mismanagement (id. ¶¶ 27-29); and (3) breach of unilateral contract (id. ¶¶ 30-37). Plaintiff alleges that Defendants mismanaged Boston Scientific, causing stock prices to drop, and that Boston Scientific management, including Defendants Tobin and Kofol, made false statements or failed to disclose material information, leading Plaintiff to purchase more Boston Scientific stock, refrain from selling his stock, or both.

Plaintiff moves for default judgment based on Defendants' failure to timely meet its deadline for answering or moving to dismiss the Amended Complaint. In addition, Plaintiff seeks to strike a motion filed by Defendants that has since been withdrawn.

Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P.

12(b)(6). First, Defendants argue that Plaintiff's fraudulent misrepresentation claim fails because it lacks the specificity required by Fed. R. Civ. P. 9(b), and, in any event, is not actionable under Minnesota law because it relates to future acts or aspirations. Further, Defendants argue that Minnesota does not recognize a claim for retaining, or "holding" stock. As to Plaintiff's breach of fiduciary duty cause of action, Defendants contend that it is derivative and that it also fails because Lagermeier does not allege facts sufficient to give rise to a "special relationship." Finally, Defendants argue that Plaintiff's breach of contract claim fails as a matter of law because the facts alleged in the Amended Complaint do not plausibly suggest the existence of a definite offer or promise by any of the Defendants. Rather, Defendants contend, the statements identified by Plaintiff merely constitute subjective opinions or general aspirations, rather than concrete and definite promises.[1]

## II. DISCUSSION

### A. Plaintiff's Motions

Plaintiff filed his Complaint on September 29, 2010 [Doc. No. 1]. Shortly thereafter, on October 8, 2010, Plaintiff filed an Amended Complaint [Doc. No. 2], which was served on Boston Scientific on October 12, 2010 [Doc. No. 4]. Pursuant to Fed. R. Civ. P. 12(a), Boston Scientific's answer to the Amended Complaint was due 21 days later on November 2, 2010.

---

[1] Following the hearing, Mr. Lagermeier filed three letters with the Court regarding the pending motions. (Doc. Nos. 44, 47 & 51.) While Mr. Lagermeier did not seek the Court's leave to file these letters, they were apparently filed in an effort to correct or clarify statements made at the hearing. Defense counsel responded to the first of Mr. Lagermeier's letters. (Doc. No. 46.) These submissions are not properly before the Court, however, because of Mr. Lagermeier's pro se status, this Court has reviewed and considered both parties' letter submissions, to the extent that the information in the letters is consistent with, and does not contradict, allegations in the Amended Complaint.

Counsel for Defendants timely filed a motion to dismiss the original Complaint on November 1, 2010 [Doc. No. 5], unaware of the existence of the Amended Complaint until later that evening. (See Decl. of Robert L. Schnell ¶¶ 3-4 [Doc. No. 22].) Upon discovering the existence of the Amended Complaint, Defendants' counsel contacted the undersigned judge's chambers to determine the best way to file an amended motion to dismiss directed to the Amended Complaint. Defense counsel also contacted Mr. Lagermeier to inform him that they had filed their dismissal motion while unaware of the Amended Complaint, but intended to file an amended motion directed at the Amended Complaint. (Id. ¶¶ 5-6.) On November 3, 2010, Defendants filed notice of the withdrawal of the hearing date and memorandum regarding the Motion to Dismiss [Doc. No. 12]. That same day, Plaintiff filed the instant motion to strike Defendants' Motion to Dismiss and to seek entry of default judgment based on Defendants' failure to comply with the 21-day period in which to file and answer or move for dismissal [Doc. No. 13]. On November 4, 2010, Defendants withdrew their previously-filed Motion to Dismiss and filed Defendants' Motion to Dismiss the Amended Complaint [Doc. No. 17].

Pursuant to Fed. R. Civ. P. 55, a party may move for entry of default judgment. There is a "judicial preference for adjudication on the merits," Burns v. Office of Attorney General, No. 05-CV-858 (PJS/RLE), 2007 WL 2247600, at *3 (D. Minn. Aug. 2, 2007) (citing Oberstar v. F.D.I.C., 987 F.2d 494, 504 (8th Cir. 1993)), and "[d]ismissal and entry of a default judgment should be the rare judicial act." Schleper v. Ford Motor Co., Automotive Division, 585 F.2d 1367, 1377 (8th Cir. 1978). Accordingly, courts have considered the circumstances when entry of default judgment is appropriate, and when it is not:

> Default judgment is appropriate where the party against whom the judgment is sought has engaged in "willful violations of court rules, contumacious conduct, or

> intentional delays." However, "default judgment is not an appropriate sanction for a 'marginal failure to comply with time requirements.' "

Forsythe v. Hales, 255 F.3d 487, 490 (8th Cir. 2001) (internal citations and quotations omitted).

In addition, courts also consider "whether the party has filed a responsive answer, or other pleading, prior to any entry of Default Judgment." Burns, 2007 WL 2247600, at *3. In evaluating whether the party's conduct is excusable, this Court has found the following factors to be of principal consideration: "1) 'the blameworthiness of the defaulting party;' 2) whether the defaulting party has presented a meritorious defense; and 3) prejudice to the non-defaulting party." Id. (citing Johnson v. Dayton Electric Manufacturing Co., 140 F.3d 781, 784-85 (8th Cir.1998). Prejudice may not be found from the fact of delay alone, or because the defaulting party will be permitted to proceed on the merits, but must instead consist of a "concrete" form of prejudice such as "'loss of evidence, increased difficulty in discovery, or greater opportunities for fraud and collusion.'" Id. (quoting Berthelson v. Kane, 907 F.2d 617, 621 (6th Cir. 1990)).

Here, Defendants' counsel was unaware of the Amended Complaint and timely filed a Motion to Dismiss based on the original Complaint, yet consistent with the 21-day filing deadline triggered by service of the Amended Complaint. Whatever the cause of the confusion, upon learning of the existence of the Amended Complaint, Defendants' counsel sought to rectify the situation by notifying Plaintiff of the error, withdrawing the original notice of hearing and memorandum and, within a few days, withdrawing the original Motion to Dismiss and filing a new Motion to Dismiss based on the Amended Complaint. This is not a situation where a party has willfully or intentionally flouted the rules. Instead, it appears to have been a procedural mistake, apparently caused by a lack of communication, or miscommunication, between Defendants and their counsel. Most importantly, Plaintiff was not prejudiced by the short delay

resulting from Defendants filing the revised Motion to Dismiss. There was no meaningful delay, and, as the case is in its earliest stage, the discovery process was not affected. This Court's clear preference is to resolve disputes on the merits. Finding no reason to severely sanction Defendants for a procedural error that resulted in no prejudice to Plaintiff, Plaintiff's Motion for Entry of Default and Entry of Judgment is denied.

In the same motion, Plaintiff also seeks to strike Defendants' original Motion to Dismiss [Doc. No. 5]. Because Defendants withdrew that motion within days of learning of the existence of the Amended Complaint, Plaintiff's request to strike the motion is denied as moot.

**B.     Defendant's Motion to Dismiss**

In considering a Rule 12(b)(6) motion to dismiss, "we must assume that all the facts alleged in the complaint are true" and generally construe the complaint in the light most favorable to the plaintiff. E.g., Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). "The complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal," DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002), and must contain enough facts to state a claim for relief "that is plausible on its face." Ashcroft v. Iqbal, __ U.S. __ (2009); 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court may not consider materials outside the pleadings on a motion to dismiss. However, when considering a motion to dismiss under Rule 12(b)(6), a court may consider some materials that are part of the public record or do not contradict the complaint, Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999), cert. denied, 527 U.S. 1039 (1999), as well as materials that are "necessarily embraced by the pleadings." Piper Jaffray Cos.

v. National Union Fire Ins. Co., 967 F.Supp. 1146, 1152 (D. Minn. 1997). See also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 199 (1990) (court may consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint'). General information regarding Boston Scientific's corporate and shareholder data which is publicly available through its filings with the Securities and Exchange Commission is properly before the Court as a matter of public record. See In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002).

**1. Fraud**

To establish a claim for fraud, the plaintiff must establish the following elements:

> (1) a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

Hoyt Props., Inc. v. Prod. Res. Group, LLC, 736 N.W.2d 313, 318 (Minn. 2007) (citing Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn.1986)).[2] Federal Rule of Civil Procedure 9(b) requires particularized pleading as to the "circumstances" constituting fraud allegations. Such "circumstances" include the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982); Stark v. Monson, 07-

[2] The Court agrees with Defendants that Minnesota law applies to Plaintiff's fraud claims because Lagermeier is a Minnesota resident and many of the alleged statements were made in or directed to Minnesota. Even if Delaware law were to apply, the elements of fraud under Delaware law are identical to those in Minnesota. See, e.g., Gaffin v. Teledyne, Inc., 611 A.2d 467, 472 (Del. 1992).

CV-4374 (MJD/AJB), 2008 WL 189959, at *8 (D. Minn. Jan. 22, 2008). Conclusory allegations of fraud are insufficient to satisfy Rule 9(b). See Commercial Prop. Invs., Inc. v. Quality Inns, Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995).

Plaintiff alleges that Defendants engaged in a "prodigious pattern" of fraudulent representations to Plaintiff, primarily through CEO Tobin or Vice President Kofol. (Am. Compl. ¶ 17.) In particular, Lagermeier claims that statements by Tobin and Kofol induced him to retain or acquire more Boston Scientific stock. He cites to a few particular statements, including this September 30, 2004 communication from Tobin regarding his actions after a Boston Scientific stent recall:

> 'After the last stent recall, August 5th, I was the most angry I've been in the last 30 years. I immediately fired top manufacturing and engineering managers in Ireland. None of them will ever work in medical devices again; they can go make soap, chips, or cars. I'm taking more names and kicking asses along the way. It's stupid that I've been forced to contact the FDA Director, Dan Schultz, so many times and our personal cell #'s are often ringing daily.'

(Id.)

In addition, Lagermeier identifies the following June 20, 2005 statement made by Vice President Kofol to Plaintiff as a fraudulent representation:

> 'The detailed yield analysis for the .05 quarterly cash dividend that Tobin discussed with you last October, has now also been seen and approved by the Executive Committee. We're ready to go and all agree BSC can easily afford to proceed with it. What a good signal it'll be for the marketplace and another example of strong corporate governance.'

(Id.)

In his general factual allegations in the Amended Complaint, Plaintiff also alleges that Boston Scientific's Chief Financial Officer Larry Best "repeatedly and falsely" led Plaintiff to believe that the company's financial statements were fair and accurate, although Plaintiff

provides few specific dates on which such representations allegedly occurred. (Id. ¶ 16(g).) Lagermeier claims that Best's representations of solid financial footing were somehow contradicted by CEO Tobin, who, on January 12, 2005 informed Plaintiff of the following: "I am comfortable with all aspects of BSC's controls and we are in strict compliance with the Sarbanes Oxley Act. We only had to tweak a couple small areas before I was comfortable with my own sign off." (Id.) Plaintiff alleges that later, on June 11 2007, Tobin told Lagermeier that Best was eventually fired for his abusive treatment of Boston Scientific's Board of Directors and for "trying to orchestrate deals with his Wall Street cronies behind my back." (Id.) Also on June 11, 2007, Plaintiff alleges that Tobin told him that private equity venture deals orchestrated by Best put Boston Scientific into a "near complete lack of accountability," such that they would "be forced to unload this stuff for mere pennies on the dollar." (Id. ¶ 16(h).)

These relatively limited examples of Defendants' alleged fraudulent representations, which Plaintiff primarily describes in general terms, as a "prodigious pattern of continuing fraudulent representations" (see id. ¶ 17), fail to meet the requirements of Rule 9(b). As noted, Rule 9(b) requires specificity as to the time, place and content of fraudulent representations. For the limited instances in which Plaintiff specifies the date of the allegedly fraudulent representations (see, e.g., id. ¶¶ 16(g)-(h)), the allegations lack sufficient context to determine how the statements were fraudulent, or false, and how Plaintiff was damaged by the specific statements. Lagermeier's generalized statements averring that "Defendants" engaged in fraud, fail to meet Rule 9(b)'s specificity requirements as well, because Rule 9(b) "'does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately

of the allegations surrounding his alleged participation in the fraud.'" Petersen v. England, No. 09-CV2850 (JRT/JSM), 2010 WL 3893797, at *10 (D. Minn. Sept. 30, 2010) (quoting Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007)).

In addition to the failure of the pleadings to meet the stringent requirements of Rule 9(b), for those statements specifically identified by Plaintiff, Defendants contend that the statements fail to state claims for fraud for the following three reasons: (1) Plaintiff fails to identify the way in which the statements were false when made; (2) forward-looking statements do not become false or actionable simply because the anticipated event does not come to pass; and (3) many of the statements constitute vague puffery or opinion, lacking in factual content and legal materiality. (Defs.' Mem. Supp. Mot. Dismiss at 12.) The Court agrees. One element of fraudulent misrepresentation requires that the statement be false when made and that the speaker knows of its falsity. See Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010) (finding the statement that [potential business partner] Microsoft had a "green light" to acquire the defendant's start-up company lacked particularized facts showing that it was false when made, and the statement that the defendant was "very good at maneuvering withing Microsoft" was merely an opinion and too generalized to support a misrepresentation claim). The specific statements identified in ¶¶ 16-17 of the Amended Complaint are not accompanied by an allegation describing how they were false when made, or that the particular speaker was aware of their falsity. In addition, when a representation regarding a future event is alleged (i.e., "Hang in there, better days ahead" [Am. Compl. ¶ 16(e)] or "What a good signal it'll be for the marketplace and another example of strong corporate governance" [id. ¶ 17)], the plaintiff must additionally allege that the party making the representation "had no intention of performing

when the promise was made." Martens v. Minnesota Mining & Mfg. Co., 616 N.W.2d 732, 747 (Minn. 2000). This type of additional allegation is lacking in the Amended Complaint.

As to those statements conveying financial information, "[f]alse promises or projections of profits can be the basis of a fraud action, but only if they are false representations of a past or present material fact." Trooien, 608 F.3d at 1029 (citations omitted). Plaintiff cites to different statements made by CEO Tobin regarding former CFO Larry Best (Am. Compl. ¶ 16(g)), apparently to demonstrate that Tobin's earlier statements regarding Boston Scientific's financial standing were false. But, if anything, the statements simply demonstrate that Tobin's opinion of Best changed over time – Plaintiff does not allege that Tobin falsely represented a past or present material fact. Such statements constitute mere predictions or opinion, which cannot form the basis of a fraud claim. Liimatta v. V & H Truck, Inc., No. 03-CV-5112 (JNE/RLE), 2005 WL 2105497, at *4 (Aug. 30, 2005) ("A fraud claim cannot be based on predictions, opinions, or sales puffery.")

In Liimatta, a case involving a type of logging machinery known as a "forwarder," the court found that the following statements did not support actionable claims for misrepresentation because they were statements of future acts or predictions of future events: (1) "[the machinery distributor] was in the beginning stages of what was going to be an extended relationship with [the manufacturer] to handle the sales and service of [the manufacturer's] forestry products;" (2) "the forwarders 'were an indication of what was going to be [the manufacturer's] considerable presence in the United States' forestry machine market;'" and (3) [the manufacturer] 'was establishing a significant parts facility in the State of Georgia which would provide prompt and ready access to parts for servicing and repair of the machines.'"

In addition, the court concluded that the following statements were not actionable, as they constituted mere opinion or sales puffery: (1) "the forwarders' 'rear axle design with its gear was of superior design and function' to those of competitors;" and (2) "the forwarders 'were also superior to competitors' machines, in that they would be more easily and timely serviceable in the field.'" Id. at *5; see also In re Medtronic Inc. Sec. Litig., 618 F. Supp.2d 1016, 1031 (D. Minn. 2009) (concluding that the statement that Medtronic was "well positioned in some of the most attractive worldwide markets, and [has a] top flight leadership team that will help take Medtronic to the next level" was no more than a "promotional phrase used to champion the company," and was "devoid of any substantive information."). Here, statements such as "[w]hat a good signal it'll be for the marketplace and another example of strong corporate governance" (Am. Compl. ¶ 17), and "[h]ang in there, better days ahead" (id. ¶ 16(e)), are statements made in a similar vein, i.e., they are predictions, opinions or sales puffery.

The Court concludes that Plaintiff's fraud claims lack the requisite specificity required by Fed. R. Civ. P. 9(b), and that the alleged statements themselves do not form the basis of actionable misrepresentations under Minnesota law. Although the lack of compliance with Rule 9(b) would ordinarily lead to dismissal without prejudice, Plaintiff's fraud claims suffer from a more fundamental problem. Under federal law, purchasers or sellers of securities have standing to seek relief, but persons who merely "hold" stock, do not. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730-31, 737 (1975) (holding that standing to bring private damage action under SEC rule 10b-5 is limited to actual 'purchasers' or 'sellers' of securities.) Nor is such a claim cognizable under Minnesota common law. See Loop Corp. v. McIlroy, No. A04-362, 2004 WL 2221619, at *5 (Minn. Ct. App. Oct. 5, 2004) (finding that "Minnesota law has

not recognized a common-law holding claim related to securities.") Because the essence of Plaintiff's fraud claim is that he was induced to continue holding Boston Scientific stock, he may not maintain a private action under federal law and state common law. For all of these reasons, Plaintiff's fraud claims fail as a matter of law.

**2. Breach of Fiduciary Duty**

Duties of a corporation's officers and directors are generally governed by the law of the state of incorporation. See Potter v. Pohlad, 560 N.W.2d 389, 391 (Minn. Ct. App. 1997). Boston Scientific is a Delaware corporation, and the fiduciary obligations of a Delaware corporation's officers and directors are determined by application of Delaware law. Id. (citing Weiss v. Kay Jewelry Stores, Inc., 470 F.2d 1259, 1268 (D.C. Cir.1972)).

Under Delaware law, a corporation does not owe fiduciary duties to its own shareholders, but instead the duty is owed by the corporation's directors and officers. See Alessi v. Beracha, 849 A.2d 939, 950 (Del. Ch. 2004). Therefore, Plaintiff's claim against Boston Scientific fails as a matter of law.

Assuming the facts alleged as true, if individual Defendants Tobin and Kofol breached their fiduciary duties, Defendants argue that any claim for breach of fiduciary duty belongs to Boston Scientific, and any claim on Plaintiff's part is considered derivative. (Defs.' Mem. Supp. Mot. Dismiss at 18.) The court in Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004), articulated the standard for determining whether a claim is derivative or direct, namely, by asking who suffered the alleged harm – the corporation or the individual stockholder? "The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the

stockholder and that he or she can prevail without showing an injury to the corporation." Id. at 1039.

Applying this test to the facts alleged here, the alleged mismanagement and misrepresentations that allegedly caused Plaintiff's harm would have injured Boston Scientific as a whole and all other shareholders. See Manzo v. Rite Aid Corp., No. Civ. A. 18451-NC, 2002 WL 31926606, at *5 (Del. Ch. Dec. 19, 2002) ("[t]o the extent that plaintiff was deprived of accurate information upon which to base investment decisions and, as a result, received a poor rate of return on her Rite Aid shares, she experienced an injury suffered by all Rite Aid shareholders in proportion to their pro rata share ownership."), aff'd, 825 A.2d 239 (Del. 2003). While Mr. Lagermeier may have owned a large quantity of Boston Scientific shares and sustained a significant financial loss when the value of those shares plummeted, he was not unique among Boston Scientific shareholders in general, in realizing the loss in value of the stock. One policy reason for requiring claims of corporate mismanagement to be brought on a derivative basis is that "[r]equiring derivative enforcement of claims belonging in the first instance to the corporation also prevents an individual shareholder from incurring a benefit at the expense of other shareholders similarly situated." See Corwin v. Bresler, 741 F.2d 410, 414 (D.C. Cir. 1984).

A derivative action requires compliance with Fed. R. Civ. P. 23.1. Under Rule 23.1, a plaintiff must plead with particularity: (1) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (2) the reasons for not obtaining the action or not making the effort. Fed. R. Civ. P. 23.1(b)(3)(A)&(B). Here, the Amended Complaint fails to allege that Mr. Lagermeier made

such a demand on Boston Scientific's directors and does not provide a reason for not doing so.

In addition, even assuming Plaintiff could maintain a direct fiduciary duty claim, he has not pled the existence of a "special relationship" giving rise to a fiduciary duty.  In determining whether a fiduciary relationship exists, Delaware courts have been reluctant to expand the definition of fiduciary relationship and have generally found a fiduciary duty only where "a 'special trust in another' or a 'special duty' exists between parties rising to the level that the 'relationship connotes a dependence,'" or "'an implied condition of superiority of one of the parties over the other.'"  Dynamis Therapeutics, Inc. v. Alberto-Culver Int'l, Ca.A. No. 09-773-GMS, 2010 WL 3834405, at *3 (D. Del. Sept. 22, 2010) (citations omitted); N. Am. Catholic Ed. Programming Found., Inc. v. Gheewalla, No. Civ. A. 1456-N, 2006 WL 2588971, at *12 (Del. Ch. Sept. 1, 2006).   Mr. Lagermeier alleges that he was one of Boston Scientific's "substantial 'outside' investors" and one of its "staunchest supporters" (Am. Compl. ¶¶ 12, 14), but the facts alleged in the Amended Complaint do not demonstrate that his relationship with Boston Scientific was marked by any kind of "dependence" giving rise to a special fiduciary duty.  Given Plaintiff's independent knowledge and research in the area of medical devices and investments, his relationship with Defendants lacks any such dependence.  Nor was the relationship that of superior-subordinate.   Finally, because the Delaware statute of limitations for breach of fiduciary duty claims is three years, 10 Del. C. § 8106, many of the actions on which Plaintiff bases his claims are time-barred.  For all of these reasons, Plaintiff's fiduciary duty claim fails as a matter of law.

### 3. Breach of Unilateral Contract

Whether a unilateral contract exists is a question of law to be resolved by the court.

Martens, 616 N.W.2d at 740. Under Minnesota law, a unilateral contract requires: (1) an offer definite in form, (2) communication of the offer, (3) acceptance and (4) consideration. Nebraska Beef, Ltd. v. Wells Fargo Bus. Credit, Inc., 470 F.3d 1249, 1251 (8th Cir. 2006) (citing Martens, 616 N.W.2d 732, 742 (Minn.2000). "An offer must contain sufficiently definite terms to enable the fact-finder to interpret and apply them." Id. Plaintiff alleges that Defendants generally made promises to "increase shareholder values with the Company." (Am. Compl. ¶ 34.) In December 2006, Lagermeier alleges that CEO Tobin told him that successful corporate integration following a merger with manufacturer Guidant was moving faster than expected, and that "a lot is popping out, the turnaround may seem slow at times, but stay with us, mate, as every aspect of our business has turned." (Id.)

Apparently in consideration, Plaintiff alleges that due to his medical industry network, he provided considerable referral services to Boston Scientific, with "Plaintiff conferr[ing] benefits to [Defendants] almost as a business confidant in exchange for the promise by Tobin, Kofol and others to get the stock back to once higher levels." (Id. ¶ 34.) Plaintiff avers that Defendants acknowledged the value of his services by making statements such as "many thanks for your ongoing support of BSC. The entire team here appreciates your input very much. All the best." (Id. ¶ 32.) Plaintiff contends that he continued to provide these business referrals and introductions, "in spite of Defendants' continued promises to increase stock values while they orchestrated actions which plummeted BSC shares." (Id. ¶ 34.) Also in return for his services, and in support of his breach of contract claim, Plaintiff avers that Boston Scientific offered "regular inducements" to Plaintiff including tours of the company's headquarters, invitations to healthcare seminars and social events. (Id. ¶ 33.)

The statements identified by Plaintiff are not sufficiently concrete as to constitute an offer. A statement that the company was turning around cannot be considered an "offer," particularly as the person who made such a statement possessed no ability to control stock market prices. Furthermore, many of the statements are simply expressions of gratitude – the "regular inducements" which Lagermeier describes are typical of the perks or expressions of appreciation that many entities bestow upon their investors or benefactors. Regarding Plaintiff's breach of contract claim, the Amended Complaint also fails to identify who, what, where and when a specific Defendant allegedly breached any such unilateral contracts and how Plaintiff communicated acceptance of any offers. While the Court is sympathetic to Plaintiff's plight, he has not pled the elements of a cause of action for breach of a unilateral contract. Plaintiff's claim for breach of contract fails as a matter of law.

## III. CONCLUSION

Based on all of the above, the Court finds that Plaintiff's claims fail as a matter of law.

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion [Doc. No. 13] is **DENIED AS MOOT** as to striking Defendants' Motion to Dismiss, and **DENIED** as to Entry of Default and Entry of Judgment; and

2. Defendants' Motion to Dismiss the First Amended Complaint [Doc. No. 17] is **GRANTED.**

Let Judgment be entered accordingly.

Dated: July 19, 2011

                                                s/Susan Richard Nelson
                                                SUSAN RICHARD NELSON
                                                United States District Judge